IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

SIDNEY RONALD SILVERMAN, JR.,

Plaintiff,

v.                                                              Civil Case No. 3:11cv155-JAG

TOWN OF BLACKSTONE, VIRGINIA,

Defendant.

## MEMORANDUM OPINION

This case involves the termination of the employment of Ronald Silverman, an employee of the Town of Blackstone, Virginia (the "Town" or "Blackstone"). Silverman contends that the Town[1] fired him for exercising his rights under the First Amendment. The alleged speech in this case consists of years of communications about Town business between Silverman and his supervisor. Because these communications were part of his job, they are not protected speech under the First Amendment. The complaint, therefore, must be dismissed.

A second reason compels dismissal of the complaint. The plaintiff has not alleged any facts showing causation; he has not set forth a plausible claim that his speech led to his termination.

---

[1] The Town is the sole defendant in this case. Silverman has not sued any individual involved in his termination.

## I. Proceedings

Silverman commenced this suit by filing a three-count complaint. Two of the counts attempt to allege claims arising under Virginia's whistleblower statute and the public policies reflected in that statute. The Court granted a motion to dismiss both state law counts.

The third count, arising under 42 U.S.C. § 1983, alleges that Blackstone fired Silverman in violation of his First Amendment rights. The Town moved to dismiss the First Amendment claim at the same time as the state law counts, but the Court directed Silverman to file a more definite statement of his constitutional claim. Silverman has filed a detailed statement of the facts underlying his claim, and Blackstone has renewed its motion to dismiss the case. The renewed motion to dismiss is currently before the Court.

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint; it does not resolve contests surrounding the facts of the case, the merits of a claim, or the applicability of any defense. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254-55 (W.D. Va. 2001). To survive a motion to dismiss, a complaint must contain sufficient factual matter which, accepted as true, "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id.* It requires the plaintiff to articulate facts that, when accepted as true, "show" that the plaintiff has stated a claim entitling him to relief, that is, the

"plausibility of 'entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 557). Although the Court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Moore v. Flagstar Bank*, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (quoting 5 A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (1990)). The Court may also look to documents attached to the complaint and those incorporated by reference without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. *See Pueschel v. United States*, 369 F.3d 345, 353 n.3 (4th Cir. 2004) (citations omitted).

### III. Facts Alleged in Complaint and More Definite Statement

In the complaint and more definite statement, the plaintiff has provided the Court lengthy and detailed allegations, with supporting documentation, of the facts that he believes result in a First Amendment violation. The relevant allegations are as follows:

Blackstone is a small town in rural Virginia. Silverman was employed by Blackstone as the director of its Water and Waste Utilities Department. The department handles the Town's water and sewage service. Silverman reported to the Town Manager, Larry Palmore. Palmore fired Silverman on June 22, 2010, giving as his reason budgetary concerns and Silverman's ineffective supervision of employees. (Complaint, Ex. A, 7.)

Relations between Palmore and Silverman began to deteriorate in 2004. (*Id.* at 4.) Around that time, Silverman became dissatisfied with Palmore's leadership of the Town. The plaintiff voiced his growing dissatisfaction in a series of letters and memoranda he sent to Palmore. The documents detailed what Silverman viewed as poor management, and they explained in great detail how the Town should operate the water and sewage plants.

*After* his termination, Silverman appeared before the Blackstone Town Council (the "Council") to explain how sewage and water issues should have been handled, and how Palmore had bollixed them. At that time, Silverman provided to the Council, for the first time, the various missives he sent to Palmore. (Compl., Ex. A, 28-70; More Definite Statement, Attachs. 1-36.) In addition, he provided written "Opening Remarks" that ran to sixteen typed pages, single-spaced. (Compl., Ex. A, 12-27.) He also provided the Council his resume and a list of his accomplishments. (More Definite Statement, Attach. 8, 62-70.) Silverman urged Council to make changes and to rehire him so that he could run things the right way. (Compl., Ex. A, 8.)[2]

Silverman's "Opening Remarks" are paradigmatic of all his communications: a dense and highly detailed product apparently written in stream-of-consciousness style. His letters to Palmore discuss sewage and water problems that range from the mundane to the important. Many of Silverman's communications with Palmore warn of catastrophes that will stem from ignoring his suggestions. Silverman told the Council that the documents he was giving to them were consistent with all his communications with Palmore, and they all dealt with the business of the Department of Utilities. He said:

> The materials I have provided you represent the kinds [of] issues I've been bringing to [Palmore's] attention for many years. While Mr. Palmore has found some of these matters unnecessary, tedious, or even humorous, I don't.

---

[2] Silverman was half successful in his quest to change Town management. The Town fired Palmore, but it did not bring Silverman back.

4

(Compl., Ex. A, 8.)

Significantly, the communications were purely internal documents. Silverman did not relay his concerns to the Council or the local press. Indeed, he boasted in his "Opening Remarks" to the Council that he had always followed "the chain of command to report [his] concerns." (Compl., Ex. A, 8.) The chain of command took him to Palmore, his superior in the Town's organization.

On a few occasions, Silverman discussed his concerns with members of the Town staff other than Palmore. Again, however, he communicated with them about Town business of mutual concern, and he did not take his concerns outside the circle of Town management.

All of Silverman's communications dealt with issues in his bailiwick—the utilities department. Typical of his communications is his letter of October 9, 2007. It is written on Town letterhead. It is six pages long, single-spaced. It discusses countless issues, and contains a list of "Unresolved Issues and Concerns." The list consists of 40 numbered items that Silverman thought important, including such items as "mud valves at the back of the coagulation basin" (Issue 1), peeling paint (Issue 5), water puddles that remain until they evaporate (Issue 12), the "electrical conduit for the sludge suckers" (Issue 16), and inadequate window screens (Issue 39). (More Definite Statement, Attach. 14.)

Silverman has produced written communications dating back to 2003. The ones closest to his termination in June 2010 are most relevant to show the alleged motive for his termination, so the Court will review the documents generated in the eighteen months before his firing. They consist of the following:

- January 14, 2009. Letter to Palmore regarding disinfection by-products of chlorination of water. (More Definite Statement, Attach. 17.)

5

- September 24, 2009. Memorandum to utilities staff about certification of sewage plant operators. (*Id.*, Attach. 15.)

- September 28, 2009. Letter to Palmore dealing with an incorrect time sheet for an employee who may have been doing private work on Town time. (*Id.*, Attach. 29.)

- October 26, 2009. Letter to Palmore regarding monitoring plan for cryptosporidium.[3] (*Id.*, Attach. 5.)

- December 14, 2009. Email to Palmore requesting copies of overflow reports and information about monitoring cryptosporidium. (*Id.*, Attach. 23.)

- March 16, 2010. Letter to Palmore dealing with certification of employees. (*Id.*, Attach. 16.)

- April 15, 2010. Letter to Palmore regarding budget issues. (*Id.*, Attach. 1.)

- April 21, 2010. Letter to Palmore regarding budget requests. (*Id.*, Attach. 2.)

- April 29, 2010. Memo to Town purchasing agent regarding expenses of the Utilities Department. (*Id.*, Attach. 11.)

- May 14, 2010. Letter to Palmore relating to overflows from sewage lines. (*Id.*, Attach. 24.)

- June 21, 2010. Letter to Palmore regarding sale of water for use in an irrigation pond. (*Id.*, Attach. 34.)

Some of Silverman's correspondence is long, some short. Some of the letters are highly opinionated; some simply convey information. But, they all share one characteristic: in them Silverman reported and made recommendations to his superiors on conditions at the Town's

---

[3] According to the Centers for Disease Control, cryptosporidium is a water-borne parasite that causes diarrhea. *See* Centers for Disease Control and Prevention—Parasites, Cryptosporidium http://www.cdc.gov/parasites/crypto/.

utilities department. None of the communications contain so much as a hint that Silverman will circumvent Palmore and take his concerns to the Council or the press.

## IV. Discussion

### 1. Silverman Did not Engage in Protected Speech.

Public employees do not shed the protection of the First Amendment by taking a job with the government. *See Connick v. Myers*, 461 U.S. 138, 142 (1983) ("For at least 15 years, it has been settled that a state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression."); *Pickering v. Board of Ed. of Township High Sch. Dist.*, 391 U.S. 563, 568 (1968). As private citizens, they may make public statements about matters of public interest, without fear of retaliation. At the most basic level, a public employer may not fire an employee simply because the employee spoke out publicly, whether the speech occurs at a meeting of the local governing body, in a letter to the editor, or on a street corner. *See Garcetti v. Ceballos*, 547 U.S. 410, 411 (2006) ("So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively."). When speaking as a private citizen, public employees enjoy the same right to free speech as any private citizen.

Like a private citizen working in the private sector, however, a public employee must serve his employer's interest. The government, as an employer, has the right to demand that employees are respectful in the workplace, that they produce written work that is concise and relevant to their duties, and that they support the government's objectives on matters relating to

7

their jobs.[4] Thus, when a public employee speaks as an employee, his speech is not protected by the First Amendment. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421.

"The First Amendment does not invest [public employees] with a right to perform their jobs however they see fit." *Id.* at 422. The government as employer may regulate the content of its employees' official speech. An employee "must stick to the party line or face discipline." *Bowers v. Rector & Visitors of The Univ. of Va.*, 478 F. Supp. 2d 874, 886 (W.D. Va. 2007). In an analogous situation, the Fourth Circuit has held that teachers may not include in their curriculum whatever content they want; their "curricular" statements are not protected speech. *Lee v. York County Sch. Div.*, 484 F.3d 687, 694-97 (4th Cir. 2007). Many communications by government employees concern matters of public concern; indeed, given that they work for the government, most of the employees' official workplace communications inherently deal with matters in which the public has some interest. But, because employees' statements as employees (and not as private citizens) must be controlled by the government as employer, those statements simply are not protected speech. The First Amendment does not guarantee the right to say what one wants on the job.

Here, Silverman's various communications clearly are made pursuant to his job. The sheer number of communications he generated demonstrates that his reports to management were

---

[4] Of course, public employees may speak as private citizens on matters related to their jobs. Indeed, their job-related expertise can add a great deal to the public discourse. Thus, public employees may generally express their views in public on issues of public concern. *See, e.g., Connick*, 461 U.S. at 146-148.

8

duties of his job. All of them deal with the water and sewage plants. Some of them contain factual matter; many of them contain Silverman's opinions. Typical of his communications was his October 9, 2007 missive. It is a long, single-spaced discussion of forty "unresolved issues and concerns." Those concerns range from the highly technical ("mud valves at the back of the coagulation basin") to the mundane (complaints about the window screens). Over the years, his communications contained budget requests, reports on monitoring plans of effluent, information about certification of employees, a proposed sale of water for use in irrigation, and the like.

Significantly, the bulk of Silverman's written messages are either on official town email or on letterhead of the sewage plant. Silverman wrote his documents simply to get his superiors to do things his way.[5] After his firing, he told the Town Council that he had always followed the "chain of command" by communicating his work related concerns to his boss, Town Manager Palmore, demonstrating that he believed he was providing information as part of his job. (Compl. Ex. A, 8.) Under *Garcetti*, Silverman's statements are part of his job and are, therefore, not protected speech.

Recognizing this problem with his case, Silverman argues that Palmore really fired him because Palmore was afraid that Silverman would take his various complaints to a public forum in the future. In other words, Silverman says the Town fired him because of speech he might make in the future.

This argument encounters three problems. First, the record shows that Silverman never threatened exposure. In his various memoranda, Silverman does not even suggest that he will air

---

[5] An exhibit to Silverman's complaint says that the communications produced to the Town Council (the same ones produced to the Court) are representative of the kinds of matters he drew to Palmore's attention. (Compl., Ex. A, 8.)

9

his grievances publicly, and the record contains no suggestion that Palmore feared exposure of issues at the sewage and water plants.

Second, Silverman never voiced his concerns publicly until after his firing. The Fourth Circuit has said that, unless an employee exercises his right to free speech, he has not engaged in protected conduct. No First Amendment claim arises when an employee does not allege that he engaged in "expressive activity." *Smith v. Frye*, 488 F.3d 263, 266 (4th Cir. 2007).

In *Smith*, the plaintiff contended that the defendant fired her because he feared that she might, in the future, campaign in favor of her son, a candidate for public office. In upholding the dismissal of her First Amendment claim, the Fourth Circuit said that "the district court found Ms. Smith's claim failed because she had not spoken or expressed herself in any way. We find no error in the district court's analysis on this issue . . . ." *Id.* at 267. The court refused to recognize a cause of action under the First Amendment for future speech. "Given the government-as-employer's interests in regulating workplace behavior, including speech in some instances, recognizing a cause of action for employees based on speech not yet spoken would seem an ill-advised disturbance to the balance established in the *McVey* test, especially in an at-will setting." *Id.* at 267 n.1.

Finally, the Court has serious concerns that an attempt to blackmail one's supervisor by exposing his flaws to his employer is protected speech. If Silverman had actually threatened to report Palmore's misdeeds as a way of forcing Palmore to provide funding or new equipment for his department, his conduct likely amounts to extortion under Virginia law. In Virginia, a person is guilty of extortion if he "threatens injury to the character . . . of another person, and thereby extorts money, property or pecuniary benefit. . . ." Va. Code § 18.2-59 (2011). This Court has held that "the First Amendment provides no defense to the imposition of liability for engaging in

10

extortion, even if the extortion is effectuated by speech." *Smithfield Foods Inc. v. United Food & Commer. Workers Int'l Union*, 585 F. Supp. 2d 815, 822 (E.D. Va. 2008).

In short, Silverman did not engage in protected speech, and therefore, cannot state a claim under the First Amendment.

### 2. Silverman Has Not Alleged Causation.

Silverman's complaint and more definite statement do not make a plausible claim that Palmore fired him because of his speech. Rather, the pleadings contain only conclusory allegations of causation. The papers filed with the Court do not recount any threats made by Palmore or even that he feared exposure. In fact, the documents on file do not even show that Palmore objected to Silverman's discourses. The communications went on for at least seven years; nothing shows that Palmore suddenly wanted to quiet Silverman and therefore fired him.

It is axiomatic that the plaintiff must show that his speech caused his termination. *Hartwell v. City of Montgomery*, 487 F.Supp. 2d 1313, 1321 (M.D. Al. 2007) ("To set forth a claim of retaliation, a public employee must show . . . the speech played a substantial or motivating role in the adverse employment action."); *Scruggs v. Keen*, 900 F. Supp. 821, 830 (W.D. Va. 1995) ("Assuming that the plaintiff survives the balancing test, and thereby proves that the speech was entitled to First Amendment protection, the plaintiff must finally prove that she was fired because of that speech."). The pleadings here come nowhere near showing causation, except in conclusory allegations. The plaintiff has made numerous allegations of fact, and has provided the Court with hundreds of pages of documents. Unfortunately, in all the paper produced, nothing even suggests that Silverman's communications led to his ouster.

Silverman's failure to allege a plausible claim of causation requires the dismissal of his complaint.

11

## V. Conclusion

For the reasons stated, the Court will grant the motion to dismiss. An appropriate Order shall issue.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

Date: February 2, 2012
Richmond, VA

/s/ 
John A. Gibney, Jr.
United States District Judge